[Civ. No. 2673.   Third Appellate District.—March 19, 1924.]

## MARY M. HELLMUTH et al., Appellants, v. BANK AND TRUST COMPANY OF CENTRAL CALIFORNIA (a Corporation), Respondent.

[1] BANKS AND BANKING—AMOUNT OF DEPOSIT—EVIDENCE—FINDINGS. In this action to recover a sum of money claimed to have been deposited by plaintiff in her savings account with defendant bank, the dispute arising over the question whether the deposit by plaintiff on a certain date was $35 or $935, there was ample support for the findings that neither the teller who received said deposit nor any other person connected with the bank wrote the numeral "9" before the number "35" in plaintiff's pass-book, and that said figure "9" was written by some other person, not connected with the bank, with the fraudulent purpose of making it appear that plaintiff deposited $935 on the day in question, when in truth and in fact she deposited the sum of $35 only.

[2] ID.—CONFLICTING EXPERT TESTIMONY—FINDING—APPEAL.—In such an action, where there is a sharp conflict between the testimony given in behalf of the defendant and that presented by the plaintiff, the rule is that the reviewing court will not interfere with the finding of the trial court; and such rule is no less binding on the reviewing court as to expert or opinion testimony than it is as to testimony of a positive or direct kind.

---

(1) 7 **C. J.**, pp. 669, 876, secs. 376, 943.   (2) 4 **C. J.**, p. 884, sec. 2855.

APPEAL from a judgment of the Superior Court of Fresno County.   J. E. Woolley, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Frank L. Simons and Edward Schary for Appellants.

Harris & Hayhurst and Alfred C. Skaife for Respondent.

---

2.   See 10 **Cal. Jur.** 1172.

HART, J.—The plaintiffs are husband and wife. In the month of December, 1915, the plaintiff Mary M. Hellmuth opened a savings deposit account with the savings department of the defendant, and continuously thereafter, and until the twenty-third day of April, 1920, the time of the filing of the complaint herein, carried and maintained said savings account therein. The defendant, upon the opening of the account, issued and delivered to said plaintiff a savings bank book, in which the amounts of such deposits as were made by her in said account from time to time, from December, 1915, to January 2, 1920, were duly noted. On the last-named date the said plaintiff appeared at the bank and deposited in her savings account a sum of money. The controversy between the parties is as to the amount of the deposit made on said second day of January.

The complaint alleges that, on the second day of January, 1920, the plaintiff Mary M. Hellmuth had to her credit in the savings department of defendant the sum of $2,000.01; that she thereafter made demand in writing on the defendant to pay said sum to her and that her account in said bank be closed; that the defendant then refused and still refuses and ever since said demand was made has refused to pay her said sum of money and to accept her order for the withdrawal thereof and to close her account in said bank.

The answer admits all of the allegations of the complaint except the allegation as to the amount of money which the said plaintiff had on deposit in the defendant bank at the time this action was instituted, and as to this it is alleged that said plaintiff, on the said second day of January, 1920, had on deposit with defendant the sum of $1,100.01 only and that defendant was indebted to her on said date by reason of said deposit or savings account in no greater sum than that last named; that of the said sum of $1,100.01 so on deposit with defendant, the sum of $35, and no greater sum, was deposited by Mrs. Hellmuth on the second day of January, 1920; that after said last-mentioned deposit of $35 was made, as alleged, some person other than defendant or any of its agents or employees, and without the knowledge or consent of the defendant, "did willfully and fraudulently and with the intention of defrauding and cheating this de-

fendant, enter in said savings bank book in front of and near said record and entry therein of said deposit of Thirty-five Dollars ($35.00) above mentioned so made by the said employee of said bank who received said deposit of Thirty-five Dollars ($35.00) a figure Nine (9) in front of and near the said entry of Thirty-five Dollars ($35.00) so as to make said deposit and the record thereof in said savings bank book appear to be Nine Hundred Thirty-five Dollars ($935.00) instead of Thirty-five Dollars ($35.00)," etc.

The findings are in accord with the claims of the answer and judgment passed for defendant accordingly. The appeal is by the plaintiffs from said judgment.

[1] The single question to be determined here is whether the finding that the plaintiff did not deposit the sum of $935 in the savings department of the defendant on the second day of January, 1920, but on said date deposited the sum of $35 only derives sufficient support from the evidence.

At the time the deposit in dispute was made Mrs. Hellmuth had to her credit in the savings department of the defendant the sum of $1,065.01. If, therefore, she deposited on the second day of January, 1920, the sum of $935, then, manifestly, she had to her credit on said day, after said deposit, the sum of $2,000.01. If, on the other hand, her deposit on said day amounted to the sum of $35 only, then, quite clearly, she had to her credit in the bank, after said deposit the sum of $1,100.01 only. The receiving teller of defendant, one Roy D. Crippen, who received the deposit from Mrs. Hellmuth on the second day of January, 1920, testified that he had no distinct independent recollection of the circumstance of the deposit made by Mrs. Hellmuth on the day mentioned. He explained, though, that the second day of January having immediately succeeded a holiday, on which no business was transacted by the defendant, an unusually large number of persons were in the bank that day and transacted business with the savings department and that that fact accounted for his inability to recall the particular transaction in question. He further explained that the customary method in vogue in said bank in the matter of handling savings deposits made therein was as follows: "That the customer would present his passbook at one of two wickets maintained on the bank counter, together with the amount he desired to deposit; that the re-

ceiving teller would thereupon count the money, and, while the money still remained on the counter, would enter the amount thereof in the pass-book and then add said amount to the balance or total of the deposits which had theretofore been entered therein, thereby showing the total of the deposits made up to and including that date. After this part of the transaction was completed, the teller would then, among other things, note the amount deposited and the total amount of the account on a deposit tag, place the tag on a spindle, which was used for that purpose by all the receiving tellers in the savings department, deposit the money received in a drawer, used in common by all the tellers for that purpose, and later in the day, generally when the day's business was near its close, the deposit and the total of the account would be transferred to the ledger cards. Crippen testified that that course or custom in receiving savings deposits was invariably followed by him.

W. W. Parsons was, on the second day of January, 1920, and had been for some years prior thereto, the manager of the defendant's savings department, and as such exercised superior authority in said department over Crippen and other clerks and employees in that department. At some hour of the afternoon of said January 2d, Crippen, assisted by Parsons, commenced posting the "individual ledger"— that is, they were jointly engaged in transferring to the ledger the deposits made by the different depositors on that day. Parsons, as he testified, "happened to post that particular deposit [Hellmuth deposit] to the individual ledger," following, of course, the deposit slip or tag on which said deposit was noted by Crippen when receiving the money. It was then that the discrepancy in the Hellmuth account was discovered by Parsons, who thereupon, addressing Crippen, said: "Roy, I guess you made a bull in this account. You have added the '35' to the '65' and carried your '1' over to your thousandths." Crippen replied: "By Jove, I guess I did." The account, as transferred to the ledger, was corrected or inserted in said book upon the basis of a deposit of $35 on the said second day of January. Assuming that the same error had been made in the pass-book, Parsons and Crippen decided to call the attention of Mrs. Hellmuth thereto, but concluded that the matter might well be allowed to remain in abeyance until

that lady next called at the bank.  A few days thereafter—
the exact date was not shown—Mrs. Hellmuth appeared in
the savings department of the defendant and Crippen told
her of the error that had been made in her account.  She
insisted that she had deposited the sum of $935 on the
second day of January, 1920, and handed her pass-book to
Crippen to show that she had.  Crippen, upon examining
the book, found to his great amazement, so he testified, that
the book contained an entry of the sum of $935 as the
deposit made on said date.  As he supposed he had done,
he had noted in the pass-book as the balance of the account
after the deposit in dispute was entered the sum of $2,000.01,
which sum, as we have seen, would represent the correct
balance if the deposit in question had actually amounted to
the sum of $935.  Crippen, while admitting that the figures
$2,000.01 as representing the balance in the pass-book, had
been written therein by him, positively asserted that it was
erroneously done and, furthermore, that the figure ''9''
before and next to the figures ''35'' in the pass-book was not
written by him but had been placed there by some other per-
son; that said numeral ''9'' was not in his handwriting.
Parsons, before whom Mrs. Hellmuth was taken by Crippen,
undertook to convince said plaintiff that there had been a
mistake on the part of Crippen in noting the balance in her
pass-book on the second day of January after she had made a
deposit on that day, but she insisted that no mistake had
then been made.  She declared that she deposited the sum
of $935 on said day and that Crippen received that sum
from her and he himself inserted that amount in the pass-
book.  At the trial Crippen repeatedly and positively testi-
fied that he did not write the numeral ''9'' which appeared
before the figures ''35'' in the pass-book, making the deposit
on January 2, 1920, appear to have been the sum of $935.
He stated that the only way in which he could account for
the notation of a balance of $2,000.01 on that day after
the deposit in question was made, both on the deposit slip
and in the pass-book was that he erroneously carried the
sum of $1,100.01, which represented the actual balance ''to
the thousandths column, making $2,000.01, instead of
$1,100.01.''  He should have placed the true balance, so he
testified, in the ''hundredths column'' in the pass-book and
on the deposit tag.  Thus he was led, so he stated, to er-

roneously make the figure "2" instead of a figure "1" as the initial numeral of the figures representing the balance.

Parsons testified that he was familiar with the writing of Crippen and the characteristic manner in which he formed his figures or numerals; that he would state without qualification that Crippen made the figures "3" and "5" constituting parts of the number "935" in the pass-book, but that he was of the opinion that Crippen did not write the figure "9" in said number. Parsons further testified that there was, at the close of the day's business on the second day of January, 1920, no overplus of cash in his department of the bank, except in the sum of five dollars and some cents, but, he stated, that sum was accounted for before the day's business of the bank was closed, and, as we understand his testimony, it had no relation to the account of the plaintiffs.

It appears that, after the alleged discrepancy in Mrs. Hellmuth's account was discovered, the defendant turned the matter over to its attorneys for investigation. The theory of the bank was then, as it is now, that the pass-book of Mrs. Hellmuth having been erroneously made to indicate a balance to her credit of $2,000.01, some party, other than any of the bank officials or employees, subsequent to the deposit of $35 on January 2, 1920, had observed the mistake, and thereupon placed the figure "9" before the figures "35" so as to make the total of the deposits correspond with the total balance as indicated by the pass-book. Acting upon this belief, the attorneys for the defendant called on the plaintiffs and obtained two canceled bank checks, admittedly in the handwriting of the plaintiff, William Hellmuth, and in each of which there were numbers containing the numeral "9." Hellmuth, at the request of said attorneys, also wrote on a blank piece of paper several different numbers, each of which was partly made up of the figure "9." These several writings were used as exemplars at the trial. Prior to the trial, however, the pass-book, the exemplars and specimens of figures made by Crippen were submitted to E. O. Heinrichs, a handwriting expert, then residing at Berkeley. The opinion testimony of Heinrichs cannot be followed in detail in this opinion. It will suffice, for the purpose of this decision, to state generally herein the substance of his testimony. First it may be stated that he testified that he had had many years of experience in the business of examining

and passing on questions of the authorship of disputed handwritings; that he is a graduate of the College of Chemistry of the University of California, and that at the time of this trial was, and for some years prior thereto had been, a member of the summer faculty of the university, "giving the course there in criminal investigation, including the subject of disputed handwritings." He had had "a professional experience, examining disputed handwritings, and appearing in courts, covering the last ten years, nearly eleven years, and studying and practicing on the subject, including a professional experience of about twenty-six years." He had given testimony, as a handwriting expert, in a large number of the state courts, as well as in some of the United States and military courts. He testified that the several exemplars and the pass-book of Mrs. Hellmuth had been submitted to him without information as to the identity of the parties that wrote the same; that he made a thorough examination by the usual scientific methods of the several exemplars referred to and a like comparison of them, one with the other, particularly directing his investigation to the figure "9" as shown by the exemplars and in the pass-book in question; and that it was his positive opinion, based upon his examination of said several writings, that the figure "9," as shown in the pass-book, and which constituted a part of the number "935" contained in said book as purporting to show the deposit made by Mrs. Hellmuth on January 2, 1920, was not made by Crippen or Parsons, but that it was made by the party who made the figure "9" in the canceled checks of William Hellmuth and on the blank piece of paper on which said Hellmuth had written several numbers containing the numeral "9." In other words, assuming, as the evidence warranted, that William Hellmuth made the figures contained in the canceled checks signed by him and also certain figures on the blank piece of paper adverted to, Heinrichs' opinion was that Hellmuth wrote the figure "9" before the figures "35" in the pass-book.

The above is a sufficient statement of the testimony introduced by defendant to show that there is ample support for the findings that neither Crippen nor any other person connected with the bank wrote the numeral "9" before the number "35" in the pass-book; and that said figure "9" was written by some other person, not connected with the bank,

with the fraudulent purpose of making it appear that Mrs. Hellmuth deposited $935 on the day mentioned, when in truth and in fact she deposited the sum of $35 only.

The plaintiffs, as might naturally be supposed or expected, introduced testimony tending to show that Mrs. Hellmuth deposited in the defendant bank on the second day of January, 1920, the sum of $935. It is not necessary to detail this testimony herein. One of the witnesses for the plaintiffs, however, was an expert on handwriting, and expressed the opinion that the figures "935" and "2,000.01" in the pass-book of Mrs. Hellmuth "were made at the same time, by the same pen, same ink, and the same person." This witness had previously had some twenty-three years of experience in passing upon disputed handwritings, and was, besides being a handwriting expert, a chemist by profession.

[2]  Thus it is to be observed that there is a sharp conflict between the testimony given in behalf of the defendant and that presented by the plaintiff. The rule that reviewing courts will not interfere with the findings of fact of the trial court where, as here, there is a substantial conflict in the evidence, is so thoroughly established and so well understood that the citation of authorities in confirmation of this statement would be wholly superfluous, and this rule is no less binding on reviewing courts as to expert or opinion testimony than it is as to testimony of a positive or direct kind.  There is nothing inherently improbable in the testimony of Heinrichs, the expert witness of the defendant, nor is there any such infirmity in the like testimony of the plaintiffs.  The probative value of this testimony, as is true of any other character of testimony, was a question for solution by the trial judge.  In this connection it may be observed that the testimony of William Hellmuth in a certain particular is of such a character that it is probable the trial court, in forming its conclusion as to the facts, did not feel compelled to rely solely on the testimony presented by the defendant.  It appears that, in a certain respect, said Hellmuth's testimony was such as justly to excite some degree of doubt as to its verity.  He testified that the $935 which it is claimed his wife deposited on the second day of January, 1920, was of the sum of $950 which he gave her a day or two prior to the date of said deposit.

Asked where or how he secured that sum he explained that he had accumulated it from time to time and that as he did so deposited it in a safe-deposit box he had rented in the Farmers National Bank of Fresno, until it reached the sum mentioned. He testified that at some time between the fifteenth and twentieth days of December, 1919, for the purpose of giving it to his wife, to be deposited by her in the defendant bank, in the first part of January, 1920, he removed the money from his safe-deposit box and carried it on his person, inclosed in a pocketbook, continuously from said time until the day he gave it to his wife—a period of two weeks. He admitted what was obviously true that any sum of money would be safer against loss when kept in a safe-deposit box in a bank than it would be when carried on the person of an individual. He could not, at least he did not, give a rational reason for doing such an improvident act. It is manifestly true that a person of average intelligence (and we judge from his answers to questions propounded to him that William Hellmuth was the possessor of that degree of intelligence and sense) would not, in the absence of a special or an urgent reason for so doing, remove so large a sum of money from a place of perfect safety against its loss and carry it about on his person for approximately two weeks and thus subject it to the chance of being lost, mislaid, or taken from him. Doubtless, the trial court took this view of that portion of Hellmuth's testimony and regarded it, as well it could, as materially derogating from the evidentiary value of his entire testimony. At all events, as before declared, we cannot perceive any legal justification from the record before us for disturbing the findings of the trial court, although we feel no embarrassment in saying that if, upon the evidence as it is disclosed by this record, the trial court had given plaintiff the decision, we would, in such case, be no less bound to sanction and uphold the findings than we are as they stand here.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.